**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

LEAH CAMPER, *et al.*,

     Plaintiffs,

  v.

NATIONAL SECURITY AGENCY, *et al.*,

     Defendants.

Case No. 1:18-cv-01794-PWG

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION/FACTUAL ALLEGATIONS

In this lawsuit, two residents of Mississippi, Leah Camper ("Camper") and her mother, Atlee Camper, allege that the National Security Agency ("NSA") has been engaged in a "campaign" of "warrantless surveillance and constant harassment" against them for the past 15 years. According to the Complaint, Camper applied for a job with the Central Intelligence Agency in 2003 and also met with NSA recruiting representatives that same year. Ever since, she "has experienced harassment and other troubling incidents . . . which she believes the NSA is responsible for," ECF 1, at ¶ 2 and, "strange random encounters" that she cannot explain. *Id.* at ¶ 14.

Plaintiffs attribute no motive to the NSA for the 15 years of surveillance and constant harassment they allege in their Complaint, which (along with Atlee Camper's Declaration) include the following assertions:

> ➢ Camper's "activities have been monitored by NSA officials" to such an extent that "she has in effect been held hostage by Defendant NSA," and she "has been followed around the United States . . . ." (ECF 1, at ¶ 24; *see also* ECF 1-10, at ¶¶ 7, 12).

➤ Plaintiffs "have been treated like terrorists in America.  [Their] mobile phones are tapped regularly and computers infiltrated."  (ECF 1-10, at ¶ 3).

➤ On one occasion when Camper was on her computer, "she was automatically re-directed to NSA's website.  Now, when she turns her computer on the screen often looks different than the last time she was on."  (ECF 1, at ¶ 20).  Camper's "computer and phone passwords ha[ve] been changed constantly."  (ECF 1-10, at ¶ 7).

➤ The NSA sent Camper on "non-existent interview[s]" with Verizon, the Detroit Symphony Orchestra, and Eloyalty.  (ECF 1, at ¶ 21).

➤ Camper "believes that some of her family members have been contacted by the NSA officials and agents based on comments she has heard them say."  (*Id.* at ¶ 20).

➤ Camper cannot use her computer or television without interference by the NSA.  Her passwords have been changed without her knowledge or consent.  (*Id.* at ¶ 26).

➤ Individuals "working for the [NSA]" either destroyed or stole Camper's television, tablet, checks, a gun, and her niece's karaoke machine.  (*Id.*; *see also* ECF 1-10, at ¶ 3).

➤ "Both of [Plaintiffs'] homes are constantly invaded by [people they] believe are N.S.A. and CIA contractors, with items taken . . . ."  (ECF 1-10, at ¶ 4).

➤ Camper "was falsely charged for robbery and assault and detained at Marietta, GA Women's Detention Center because of NSA involvement."  (*Id.*).

➤ While Camper was in jail, she was told "that jail was a test to find out what her response would be to jail if sent overseas on an assignment for the government."  (*Id.* at ¶ 7).

➤ "[K]eys belonging to both Plaintiffs" were stolen in Kalamazoo, Michigan, Pinola, Michigan, and Gulfport, Mississippi.  (ECF 1, at ¶ 27).

➢ Camper "has been approached and insulted by numerous individuals with military backgrounds and harassed about bills, bathroom activities, health issues, and weight control." (*Id.* at ¶ 30).

Based upon these and similar factual allegations, Plaintiffs have lodged an eight-count Complaint, asserting claims of negligence (Count 1), intentional infliction of emotional distress (Count 2), invasion of privacy (Counts 3, 5, and 6), a statutory claim under the Privacy Act of 1974, 5 U.S.C. § 552a (Count 4), and two claims brought directly under the constitution (invoking *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)), seeking monetary damages (Counts 7 and 8).

As demonstrated below, all of the claims advanced are subject to dismissal. Fundamentally, Plaintiffs' allegations that the government is responsible for the events, coincidences, suppositions, and delusions they describe are entirely speculative, implausible, and frivolous; as such, all of the claims based on these allegations should be dismissed under Fed. R. Civ. P. 12(b)(1). *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989) (courts have the authority to "dismiss a claim based on an indisputably meritless legal theory, as well as the . . . power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless . . . [including] claims describing fantastic or delusional scenarios . . . .").

Beyond the lack of objective reality, all of Plaintiffs' common law tort claims (Counts 1, 2, 3, 5, and 6) are subsumed within the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2402, 2671-80 ("FTCA").  But Plaintiffs do not allege and cannot satisfy their burden of proving that they exhausted their administrative remedies by presenting an administrative tort claim to NSA in compliance with 28 U.S.C. § 2675(a).  Accordingly, all of their tort claims should be dismissed under Fed. R. Civ. P. 12(b)(1).

With respect to her Privacy Act claims in Count 4, Camper submitted a request for records in 2015 that the NSA construed, in part, as an "access request" under the Act.  *See* 5 U.S.C. § 552a(g)(1)(B).  The NSA responded twice thereto (and responded again after the commencement of this litigation), disclosing to Camper its responsive and non-exempt records – all of which relate to her unauthorized visits to NSA facilities.  However, Camper never requested that any of the records produced to her should be amended or corrected under the Act.  *See id.* § 552a(g)(1)(A).  As such, Camper's "access claim" should be dismissed as moot, and her "amendment claim" should be dismissed for failure to exhaust her administrative remedies.

Finally, Plaintiffs' constitutional claims in Counts 7 and 8 should also be dismissed.  There has been no waiver of sovereign immunity to allow constitutional tort claims against federal agencies or employees sued in their official capacities.  As a consequence, Plaintiffs' claims against the NSA and its former director, Admiral Michael S. Rogers ("Rogers"), in his official capacity for money damages in Counts 7 and 8 are barred.  Insofar as these counts can be read to advance personal capacity claims against Rogers, such claims should be dismissed because (among other reasons):  (1) personal service of process has not been effected upon Rogers; (2) no personal involvement by Rogers has been pled at all, let alone to the standard required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), to overcome the qualified immunity defense; and (3) since there is no respondeat superior liability under *Bivens*, Plaintiffs must plead Rogers was directly and personally involved in the specific constitutional deprivations alleged; instead, Plaintiffs' allegations here that this former high-level supervisory official somehow failed to prevent violations by subordinates fail to state plausible claims under well-established precedent.

## II. <u>STANDARDS OF REVIEW</u>

A.   MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)). The requirement that the plaintiff establish subject matter jurisdiction "as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co.*, 523 U.S. at 95 (internal quotations omitted). Plaintiffs bear the burden of showing subject-matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quotation marks omitted).

A defendant may challenge subject-matter jurisdiction under Rule 12(b)(1) by contending "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Once a defendant makes this facial challenge to subject-matter jurisdiction, "the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *accord Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999) (and cases there cited) ("It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist."); *Adams,* 697 F.2d at 1219 ("The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction."). A plaintiff receives the same procedural protection as would be afforded under Rule 12(b)(6): "the facts alleged in the

complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009).

Alternatively, a defendant may challenge subject-matter jurisdiction by claiming that the jurisdictional allegations of the complaint are not true. *Adams*, 697 F.2d at 1219. Under this scenario, the plaintiff "is afforded less procedural protection" because the trial court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits, depositions, or live testimony, without converting the motion to a summary judgment proceeding. *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219); *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). The plaintiff bears the burden of proving the jurisdictional facts by a preponderance of the evidence, *Vuyyuru*, 555 F.3d at 347-48 (citing *Adams*, 697 F.2d at 1219), "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns,* 585 F.3d at 192.

Federal courts have found that claims that are "wholly insubstantial or frivolous" lack subject matter jurisdiction to be heard. *Steel Co.*, 523 U.S. at 89. Under Rule 12(b)(1), a claim is "patently insubstantial" when it presents "no federal question suitable for decision." *Best v. Kelly*, 39 F.3d 328, 330 (D.C.Cir.1994). Claims that are "fanciful" such as those that allege "bizarre conspiracy theories, any fantastic government manipulations of their will or mind, [or] any sort of supernatural intervention" warrant a dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. *Id.* at 330-31 (emphasis added).

**B.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the complaint. *E.g., Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To

survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Although courts must generally accept as true the allegations of a complaint, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief . . . ." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

### III. <u>ARGUMENT</u>

#### A. THE ENTIRETY OF PLAINTIFFS' ACTION SHOULD BE DISMISSED UNDER RULE 12(B)(1) AS FRIVOLOUS

Plaintiffs' Complaint may be readily dismissed under Rule 12(b)(1), inasmuch as their factual allegations that the NSA has been constantly monitoring Camper's activities, constantly invading her (and her mother's) home, and otherwise harassing her for 15 years – based upon their personal belief that government agents are responsible for the events they describe – are frivolous. *Neitzke*, 490 U.S. at 327-28. Claims by citizens – like Plaintiffs' here – who suspect that a federal agency has engaged in unlawful surveillance or wiretapping activities have been repeatedly dismissed by the federal courts as "fantastic" or "delusional" pursuant to Fed. R. Civ. P. 12(b)(1).

In *O'Connor v. United States*, 159 F.R.D. 22, 24-25 (D. Md. 1994), *aff'd*, 54 F.3d 773 (4th Cir. 1995) (Table), the plaintiff included a litany of bizarre allegations in his claim. O'Connor alleged that he was subject to surveillance by the Drug Enforcement Agency ("DEA") in his home, his car, his office and at his parent's home. Like the Campers do in this case, O'Connor alleged that the DEA would tamper with his belongings and even hired civilians to speak in code words to him to further this harassment. *See id.* at 24. Judge Messitte concluded that, despite the lucidity of O'Connor's prose, his complaint remained "totally divorced from the real world" and warranted dismissal under Rule 12(b)(1). *Id.* at 26.

Specific to the Freedom of Information Act/Privacy Act context, in *Murray v. USPS*, 1998 WL 476197 (D. Md. Mar. 31, 1998), *aff'd*, 155 F.3d 560 (4th Cir. July 8, 1998) (Table), Judge Legg dismissed a FOIA action as frivolous because "the information requested by plaintiff represents the type of delusional scenario with which this Court is all too familiar." *Id.* at *1. In that case, the FOIA requester sought, inter alia, a "copy of all the investigative files surrounding the covert activity of the Postal Inspectors [,] a copy of documents detailing the location of all illegal surveillance devices, audio and video, placed in my home by the United States Postal Inspection Service [, and] the investigative files from the Agency on Bell Atlantic, who conspired with the Postal Inspectors to illegally wiretap, tape, and maintain surveillance on my telephone with warrants." This Court concluded that the action should be "dismissed as frivolous as there exists no factual basis on which it should proceed." *Id.* at *1-2.

Dismissals of similar surveillance, harassment, and wiretapping claims by sister courts are legion. *See Taha v. Cent. Intelligence Agency,* 2007 WL 4287598, *1-2 (D. Or. Dec. 4, 2007) (dismissing under Rule 12(b)(1) claims alleging, inter alia, that the plaintiff "has been spied on by the CIA and subject to illegal wiretaps since 1983"); *Richards v. Duke Univ.*, 480 F. Supp.

2d 222, 232-33 (D.D.C.2007) (former law student's claims that defendants, including the FBI, the Department of Justice, and private actors, engaged in "roving surveillance that followed her everywhere she went, even into a medical exam room" were "fantastic to the point of being patently insubstantial and warranting a dismissal" for lack of subject matter jurisdiction); *Carone-Ferdinand v. CIA*, 131 F. Supp. 2d 232, 234-36 (D.D.C. 2001) (dismissing as insubstantial under 12(b)(1) a "bizarre conspiracy theory" involving frivolous claims against the CIA); *O'Brien v. United States Dep't of Justice*, 927 F. Supp. 382, 384-85 (D. Ariz. 1995) (allegations that defendants, including the United States Department of Justice, installed "hi-tech satellite equipment upon Plaintiff's residential telephone lines" and contaminated her with "vile germs" were "so bizarre and delusional that they are wholly insubstantial and cannot invoke this Court's jurisdiction"), *aff'd*, 76 F.3d 387 (9th Cir. 1996) (Table).

Plaintiffs' allegations here are just as fantastic and incredulous as the claims before Judge Messitte in *O'Connor*. They present a "laundry list" of unconnected (and largely undated) events, coupled with entirely conclusory allegations to support their theory that a vast and long-running conspiracy orchestrated by the NSA must be behind all of the events. In sum, Plaintiffs present a fantastic and wholly implausible scenario and their Complaint should be dismissed under Rule 12(b)(1). *See, e.g., Winston v. Office of Naval Research*, PWG-16-1797, 2016 WL 4194188, at *2 (D. Md. Aug. 9, 2016) ("a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"), *aff'd*, 677 F. App'x 837 (4th Cir. 2017), *cert. denied*, 137 S. Ct. 2138 (2017).

**B.     IF NOT DISMISSED AS FRIVOLOUS, THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER ALL OF PLAINTIFF'S CLAIMS AGAINST THE UNITED STATES SOUNDING IN TORT**

**1.     ABSENT AN UNEQUIVOCAL WAIVER OF SOVEREIGN IMMUNITY, THE COURT LACKS JURISDICTION TO ENTERTAIN CASES AGAINST AGENCIES AND OFFICERS OF THE UNITED STATES**

The United States, as well as its agencies and its employees, may be sued only to the extent sovereign immunity has been expressly waived. *United States v. Testan*, 424 U.S. 392, 399 (1976); *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 476 (1994).  It is a bedrock principle of federal law that waivers of sovereign immunity must be unequivocally expressed in statutory text. *Dept. of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999)*; Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992); *Williams v. United States,* 242 F.3d 169, 172 (4th Cir. 2001).  Waivers will be construed narrowly in favor of the federal government. *Lane*, 518 U.S. at 192; *Nordic Village*, 503 U.S. at 34.  Absent a waiver of sovereign immunity, courts have no subject matter jurisdiction over cases against the government. *Testan*, 424 U.S. at 399.

**2.     THE LIMITED WAIVER OF SOVEREIGN IMMUNITY CONFERRED BY THE FTCA IS CONDITIONED UPON THE PROMPT PRESENTATION OF AN ADMINISTRATIVE TORT CLAIM TO THE APPROPRIATE AGENCY, AND PLAINTIFFS FAILED TO SATISFY THAT CONDITION, WARRANTING DISMISSAL**

Congress enacted the FTCA as a waiver of sovereign immunity for claims against the United States for money damages "arising out of torts committed by federal employees." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 217-18 (2008).  Subject to certain conditions, "[t]he Act gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.'" *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (quoting 28 U.S.C. § 1346(b)(1)); *see United States v. Kubrick*, 444

U.S. 111, 117-18 (1979); *accord, e.g., Gould v. U.S. Dep't of Health and Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990) (en banc) (the FTCA "permits suit only on terms and conditions strictly prescribed by Congress."). Although the United States has waived its sovereign immunity through the FTCA, it can only be sued in accordance with the terms of that waiver. *United States v. Orleans*, 425 U.S. 807, 814 (1976); *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

All of Plaintiffs' claims against the NSA (or against its former director) sounding in tort in this case are subsumed within the FTCA, as it is the exclusive remedy for all common law tort suits against the federal government and its employees for acts or omissions occurring in the scope of employment. *See* 28 U.S.C. § 2679(a) & (b)[1]; *United States v. Smith*, 499 U.S. 160, 166 (1991) (the FTCA is the "exclusive mode of recovery" for torts by government employees "even when the FTCA itself precludes Government liability.").

One of the significant conditions Congress placed on the FTCA's waiver of sovereign immunity is the prompt presentation of tort claims against the government. The Act provides that a tort action against the United States "shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).

_____

[1]As an intelligence service of the Department of Defense, the NSA may not be sued *eo nomine* in tort. 28 U.S.C. § 2679(a) (FTCA suits against federal agencies improper). Likewise, NSA's former director is immune from common law tort claims. *Id.* § 2679(b). In the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"), Congress conferred personal immunity on federal employees from all common-law tort claims arising out of acts taken within the scope of their employment. *See, e.g., Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425-26 (1995); H.R. Rep. No. 700, 100th Cong., 2d Sess. 4 (1988). The statute provides that the remedy available against the United States under the FTCA for "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" is exclusive, and bars any damages action against the employee "arising out of or relating to the same subject matter." 28 U.S.C. § 2679(b)(1). Thus, as pled, Plaintiffs' common law tort claims are barred in any event.

Plaintiffs make no allegations that they presented an administrative tort claim of any kind to the NSA and the burden of proving that an administrative claim has been filed lies with them. *Jarvis v. E.E.O.C.*, PWG-14-3290, 2014 WL 7342317, at *2 (D. Md. Nov. 13, 2014) (citing *Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir. 1976)). *See* Exh. 1 (Decl. of Associate General Counsel Timothy J. Stinson, describing tort claim databases and search methods and attesting that no administrative tort claim from Plaintiffs could be located in the records of the NSA).

Given that the claim presentment requirement is jurisdictional and cannot be waived, the failure to present an administrative claim with the federal agency divests the Court of subject-matter jurisdiction. *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994) (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)) ("We have observed that 'the requirement of filing an administrative claim is jurisdictional and may not be waived.'"); *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir. 1975); *Keene v. United States*, 700 F.2d 836, 841-42 (2d Cir. 1983); *Adams by Adams v. HUD*, 807 F.2d 318, 319-21 (2d Cir. 1986); *see also McNeil v. United States*, 508 U.S.106, 112-13 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. Because petitioner failed to heed that clear statutory command, the District Court properly dismissed his suit."); *Chin v. Wilhelm*, 291 F. Supp. 2d 400, 404 (D. Md. 2003) ("Failure to file an administrative claim divests the court of subject matter jurisdiction.").[2]

---

[2] Even if Plaintiffs subsequently were to present an administrative claim to NSA based upon the events they allege dating back to 2003, any ensuing court action would be (absent equitable tolling) "forever barred" by the two-year statute of limitations for FTCA claims set forth in 28 U.S.C. § 2401(b).  In any event, this Court lacks jurisdiction to hold Plaintiff's claims in abeyance should she attempt to exhaust at this juncture. *Plyer v. United States*, 900 F.2d 41, 42 (4th Cir. 1990) ("Since the district court had no jurisdiction at the time the action was filed, [the Court]

Consequently, Plaintiffs have not demonstrated compliance with the jurisdictional prerequisites to bringing an FTCA suit, and all of their claims that may be construed as being based on common law or state law torts (including those advanced in Counts 1, 2, 3, 5, and 6) should be dismissed without prejudice under Fed. R. Civ. P. 12(b)(1).

## C.     PLAINTIFFS' CLAIMS UNDER THE PRIVACY ACT ARE BARRED

In Count 4, Camper purports to state a claim under the Privacy Act of 1974, 5 U.S.C. § 552a.  She does not seek monetary relief in this count.  Instead, she requests "that an order be entered herein allowing her attorneys to review whatever files the NSA currently maintains of her activities, and that any and all false and defamatory material contained therein be deleted."  ECF 1, at 15, ¶ 53.

The Privacy Act establishes "a comprehensive and detailed set of requirements" for federal agencies that maintain systems of records containing individuals' personal information.  *Federal Aviation Admin. v. Cooper*, 566 U.S. 284, 287 (2012).  As relevant here, the Act requires subject agencies to maintain accurate and complete records, 5 U.S.C. § 552a(e)(5)-(6), and permits an individual to seek access to his or her own records maintained by the agency within a "system of records" – subject to 10 exemptions – and also to request that information be amended or corrected which the individual asserts to be "not accurate, relevant, timely, or complete."  *Id.* § 552a(d), (j), (k).

The Act authorizes civil actions to enforce its terms. *Id.* § 552a(g); *See Doe v. Chao*, 540 U.S. 614, 618 (2004) (providing an overview of the civil remedies available under the Privacy Act).  Under what is known as an "amendment claim," the Act permits an individual to bring an

could not obtain jurisdiction by simply not acting on the motion to dismiss until the requisite period had expired.") (citing *Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir. 1981)).

action against the agency challenging its failure to amend an individual's record at his or her request.  5 U.S.C. § 552a(g)(1)(A).  "Access claims" are allowed when the agency refuses to comply with an individual's request for access to his or her own records.  *Id.* § 552a(g)(1)(B).

### 1.   CAMPER'S AMENDMENT CLAIM IS BARRED BY HER FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Through pursuit of an amendment request to the agency and a subsequent request for administrative review, *id.* § 552a(d)(2)-(3), exhaustion of administrative remedies is a prerequisite to a civil action for amendment of records.  *E.g., Olivares v. NASA*, 882 F. Supp. 1545, 1552 (D. Md. 1995) ("exhaustion of the administrative remedies provided in § 552a(d) of the Act is a prerequisite to bringing a civil suit to compel amendment of the record"), *aff'd per curiam*, 103 F.3d 119 (4th Cir. 1996).  This requirement is jurisdictional in nature because it is imposed by the statute itself.  5 U.S.C. § 552a(g)(1)(A).  *E.g., Jagun v. Rodriguez*, PJM-15-2230, 2016 WL 4124225, at *8 (D. Md. Aug. 3, 2016) (citing the statute and finding no jurisdiction for an amendment claim).

In this case, after a diligent search (which uncovered Camper's access requests, discussed below), the NSA has no record that Camper sought to amend or correct any records maintained by the Agency.  Exh. 2 (Declaration of Steven E. Thompson), at ¶ 59; *see also id.* at ¶¶ 11, 13, and 18 & Attachments A, C, and G thereto (showing and describing all of Camper's FOIA and Privacy Act communications to NSA).  Moreover, although the NSA construed such communications on several occasions as administrative appeals related to her access claims (and to which the agency responded), it has no record that Camper ever pursued such review of any action or inaction related to an amendment request.  *See id.* at ¶¶ 13, 18, and 59.

As such, Camper has not exhausted her administrative remedies to pursue an amendment action in this Court, precluding jurisdiction from being exercised.[3]

### 2.   CAMPER'S ACCESS CLAIM SHOULD BE DISMISSED AS MOOT IN LIGHT OF THE NSA'S PRODUCTION TO HER OF ALL RESPONSIVE AND NON-EXEMPT RECORDS

Courts have jurisdiction to consider an access claim under the Privacy Act claim only if the government has failed to comply with a request for records.   5 U.S.C. § 552a(g)(1)(B). Conversely, when the government has responded to a Privacy Act request and disclosed all responsive and non-exempt records, the access claim is moot, since a live case or controversy no longer exists to justify the equitable relief sought.   *See Thurston v. United States Postal Service*, 810 F.2d 438, 446-47 (4th Cir. 1987) (affirming dismissal of Privacy Act claims where the plaintiff received the information she was entitled to after litigation began); *Bloom v. Soc. Sec. Admin.*, 72 F. App'x 733, 734 (10th Cir. 2003) (affirming dismissal of the plaintiff's Privacy Act claim as moot because the government "had already turned over all requested documents to [the plaintiff]"); *Lovell v. Alderete*, 630 F.2d 428 (5th Cir. 1980) (action dismissed as moot where the plaintiff received the requested documents, albeit in a tardy fashion); *Biondo v. Department of the Navy,* 928 F. Supp. 626, 631 (D.S.C. 1995), *aff'd,* 86 F.3d 1148 (4th Cir. 1996); *Falwell v. Executive Office of the President*, 158 F. Supp. 2d 734, 740 (W.D. Va. 2001) ("the fact that the FBI eventually produced the requested documents renders Falwell's claim for refusal to allow access moot").

As detailed in the Thompson Declaration and its attachments (Exhibit 2), the NSA has dutifully responded to Camper's requests for records about herself.   The first request the agency received was on June 10, 2015, via email.   Exh. 2, at ¶ 11 & Exh. A thereto.   Construing her request

---

[3]While the jurisdictional exhaustion issue is dispositive, Camper fails to plead in her Complaint how or why she contends that any record maintained about her by the NSA is "not accurate, relevant, timely, or complete."   *See* 5 U.S.C. § 552a(d)(2)(B)(ii).

as one seeking intelligence records, the NSA responded to Camper's initial request by letter dated July 9, 2015.  *Id.* at ¶ 12 & Exh. B thereto.

Later that same month, Camper responded to the NSA by letter.  *Id.* at ¶ 13 & Exh. C thereto.  Based upon the content of her letter, the NSA interpreted it as both an administrative appeal of its earlier response as well as a new Privacy Act request for information about herself.  *Id.*  The NSA responded separately to the appeal and the request.  As to the appeal, it essentially affirmed its earlier response.  *Id.* at ¶ 15 & Exh. E thereto.  And the NSA has no record that Camper further pursued her request for intelligence records.  *Id.* at ¶ 16.

As to Camper's request for Privacy Act records, the NSA responded on June 6, 2016, indicating that the agency conducted a search for responsive records, but no records were located.  *Id.* at ¶ 17 & Exh. F thereto (advising Camper that "our records do not reflect that you have ever been affiliated with this agency").  Camper sent the NSA a letter dated June 27, 2016, advising in part that she visited the NSA on May 9, 2016.  *Id.* at ¶ 18 & Exh. G thereto.  The NSA construed this letter as an appeal of its earlier response, and accordingly conducted another search for records.  *See id.* at ¶¶ 19-20 & Exh. H thereto.  The NSA responded to Camper in November 2017, explaining the search it conducted and producing three records generated by her unauthorized visit.  *Id.* at ¶¶ 21-23 & Exh. I thereto.  Finally, after the filing of this lawsuit, the NSA performed another search for responsive records in December 2018.  *Id.* at ¶ 51.  This search revealed that Camper visited the NSA at least one additional time without proper authorization, which led to the NSA producing additional records to Camper in February 2019.  *Id.* at ¶ 52 & Exh. J thereto**.**

Accordingly, even though Camper has continued to generate additional responsive records via her unauthorized visits to agency facilities, the NSA responded to her initial request and revisited her request several times to ensure that it has produced to her all responsive and non-

exempt records.  Although Camper's Complaint fails to identify any specific exemption cited by the NSA that she contends was incorrectly applied, the Agency explains in detail in the Thompson Declaration the bases for citing and applying those exemptions.

As such, Camper's claims under the Privacy Act seeking access to records maintained by the NSA should be dismissed as moot.

**D.    PLAINTIFFS' CONSTITUTIONAL CLAIMS ARE BARRED**

In Counts 7 and 8, Plaintiffs advance claims for money damages directly under the Constitution based entirely on their fanciful allegations that the NSA is responsible for constant surveillance, wiretapping, infiltration of her friends and family, and property theft and destruction for over 15 years.  In Count 7, Camper seeks recovery of $500,000.00 against both the NSA itself and Rogers under the theory that her procedural due process rights were violated.  In Count 8, although the numbered allegations refer primarily to Camper, each Plaintiff seeks an additional $500,000.00 in damages, again based on an alleged deprivation of the right to "life, liberty, and the pursuit of happiness in terms of living her daily life free from government surveillance and being able to hold permanent employment without interference from federal officials."  ECF 1, at ¶ 68.

**1.    SOVEREIGN IMMUNITY HAS NOT BEEN WAIVED FOR CLAIMS AGAINST NSA OR ROGERS IN HIS OFFICIAL CAPACITY**

Again assuming the Court could find objective reality in such factual allegations to proceed further in the analysis, there has been no waiver of sovereign immunity to allow constitutional tort claims <u>against federal agencies or employees sued in their official capacities</u>.  *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (citing *FDIC v. Meyer*, 510 U.S. 471, 484-86, (1994)) ("[A] *Bivens* action does not lie against either agencies or officials in their official capacity."); *accord Reinbold v. Evers*, 187 F.3d 348, 355 (4th Cir. 1999) ("*Bivens* does not allow for recovery of money damages,

or suits in general, against the government itself"); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) (and cases there cited) (holding that 28 U.S.C. § 1331 does not waive the government's sovereign immunity from constitutional tort claims); *Radin v. United States*, 699 F.2d 681, 684-85 (4th Cir. 1983) ("Radin argues that if a federal officer can be held liable for a fifth amendment deprivation, the United States is likewise liable for fifth amendment deprivations by federal agencies. This theory, a quantum leap from the rationale of *Bivens* . . . fails to clear the hurdle of sovereign immunity.").

Plaintiffs allege that Rogers "is the Director of the NSA and is responsible for the actions of NSA agents and employees."  ECF 1, at ¶ 5; *see also id.* at ¶ 72, *ad damnum* ("the agency and the director are both responsible for the conduct of NSA employees, agents, and contractors").[4] No other basis for including Rogers as a defendant to Counts 7 and 8 is provided by Plaintiffs.  As pled, therefore, Rogers is sued in his official capacity as NSA's former Director, and there has been no waiver of sovereign immunity for Plaintiffs' money damages claims against either the NSA or its former director in his official capacity, barring the entirety of Counts 7 and 8.

**2.  ANY PERSONAL CAPACITY CLAIMS AGAINST ROGERS SHOULD BE DISMISSED FOR LACK OF SERVICE OF PROCESS AND THE FAILURE TO PLEAD PLAUSIBLE BIVENS CLAIMS**

Insofar as the Court could divine any well-pled personal (as opposed to official) capacity claims against Rogers in the Complaint, such claims should be dismissed under Rule 12(b)(5) for failure to effect service of process.  This Court has held that, when service is challenged by a motion to dismiss, the plaintiff bears the burden of proving the validity of service.  *E.g., Defreitas*

---

[4]Even before this lawsuit was filed, Rogers was no longer NSA's Director.  In May 2018, General Paul M. Nakasone assumed that role.

*v. Montgomery Cnty.*, PWG-12-2893, 2014 WL 31885, at *2 (D. Md. Jan. 3, 2014) (quotation omitted).

Pursuant to Fed. R. Civ. P. 4(m), Plaintiffs had 90 days from the date of filing their Complaint (June 18, 2018) to effect service of process. In this case, after that initial time period expired, the Court already granted an extension to Plaintiffs to effect service in accordance with Rule 4 until January 16, 2019. ECF 6. Service of process upon an officer of the United States sued in his individual capacity is governed by Fed. R. Civ. P. 4(i)(3), which requires service upon the officer or employee under Rule 4(e), (f), or (g), in addition to serving the United States.

By the end of October 2018, Plaintiffs had served the NSA in accordance with Rule 4(i)(2) (although no returns of service appear to have been filed with the Court). But there is no indication that Rogers has been served in accordance with Rule 4(i)(3).[5]

There is a specific provision allowing the Court to provide an opportunity to cure, Rule 4(i)(4)(B), but this provision only applies where the officer or employee has been served, but not the United States. The scenario presented here is the opposite of that.

Where, as here, a plaintiff has failed to properly effect service within the time permitted, Rule 4(m) permits the Court either to dismiss the action without prejudice, or – "if the plaintiff shows good cause for the failure" – direct that service be effected within a specified time. In such instances, Local Rule 103.8(a) provides that "the Court may enter an order asking the party to show cause why the claim should not be dismissed," and if "good cause" is not shown within 14 days, "the claim shall be dismissed without prejudice." *See United States ex rel. Moore v. Cardinal*

---

[5]As discussed above, the Complaint could be read only as advancing official capacity claims against Rogers, obviating the need for such service, but also precluding viable constitutional claims for money damages.

*Fin. Co., L.P.*, CCB-12-1824, 2017 WL 1165952, at *6-8 (D. Md. Mar. 28, 2017) (collecting authorities and discussing the standards for extending service deadlines under Rule 4(m)).

In this case, Defendants respectfully submit that the Court should exercise its discretion to dismiss the claims against Rogers, without prejudice, prior to issuing an order to show cause under Local Rule 103.8.  The Court already extended the time for service once by an additional 90 days. No evidence has been adduced thus far that a third person (such as a process server) is responsible for the failure or that Plaintiffs have acted diligently in trying to effect service.  It is also entirely possible that Plaintiffs intended to sue Rogers only in his official capacity.[6]  All of these factors militate in favor of dismissal without prejudice.

### 3.   PLAINTIFFS FAIL TO PLEAD PLAUSIBLE PERSONAL CAPACITY *BIVENS* CLAIMS AGAINST ROGERS

Qualified immunity shields government officials from claims for money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  Given that qualified immunity is "an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original), the Supreme Court "repeatedly ha[s] stressed" that courts should resolve this issue "at the earliest possible stage in litigation."  *Hunter*, 502 U.S. at 227.  Thus, <u>if a plaintiff fails to state a claim sufficient to overcome qualified immunity</u>, the Court should dismiss the action at the outset without allowing discovery.  *See Mitchell*, 472 U.S. at 526; *Iqbal*, 556 U.S. at 672, 686; *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009); *Smith*

---

[6]In view of the lack of personal service of process, factual allegations that are wholly insubstantial, and the lack of clarity of whether Rogers is being sued in his official versus his individual or personal capacity, the process of authorizing individual capacity representation by the Department of Justice has yet to be undertaken under 28 C.F.R. § 50.15.

*v. Reddy*, 101 F.3d 351, 357 (4th Cir. 1996) (qualified immunity should be addressed at the pleading or summary judgment stage whenever possible).

There is a two-part inquiry for the analysis of a qualified immunity defense. *See Pearson*, 555 U.S. at 232. The first part asks whether the facts alleged, viewed in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194 (2001), *abrogated in part by Pearson*, 555 U.S. 223). The second part considers whether the constitutional right at issue was "clearly established" at the time of the alleged violation. *Id.* Courts may analyze these two questions in "the order . . . that will best facilitate the fair and efficient disposition of each case." *Id.* at 242.

Of particular importance here, there is no respondeat superior liability in a *Bivens* suit; the named supervisory officials must be directly and personally involved in the alleged constitutional deprivations, *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (citation omitted), and allegations that a supervisory official failed to prevent violations by his or her subordinates are insufficient. *See Iqbal*, 556 U.S. at 677. The qualified immunity inquiry includes the requirement of sufficiently pleading the personal involvement of the defendant <u>and</u> the manner in which the defendant is responsible for the alleged mistreatment. *Id.* at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* or vicarious liability; rather a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution.") (citation and internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d at 402.

Where, as here, a plaintiff fails to allege a plausible *Bivens* claim against a senior government official, that official is entitled to qualified immunity, because "the sufficiency of [a

plaintiff's] pleadings is 'inextricably intertwined with' and 'directly implicated by' the qualified immunity defense." *Iqbal*, 556 U.S. at 673 (citations omitted).

In this case, even if the Court finds Plaintiffs' factual allegations are not divorced from reality, they remain bereft of factual content demonstrating that Rogers had <u>any</u> personal involvement in the alleged violation of her clearly established constitutional rights. In fact, Plaintiffs offer but two allegations against him. The first is that Rogers "is responsible for the actions of NSA agents and employees." ECF 1, at ¶¶ 72. This is the very embodiment of <u>improperly</u> seeking to impose *Bivens* liability under a respondeat superior theory. There is also the glaring issue that Plaintiffs allegations date back to 2003, are largely undated, and Rogers only became NSA's Director in 2014. And the second allegation – advanced without a single supporting fact – is that "NSA officials including Defendant Rogers have personally authorized or approved employees or contractors engaging in the activities described herein." *Id.* at ¶ 71. The Supreme Court has expressly held that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4ᵗʰ Cir. 2009) (internal quotation marks omitted) (under Rule 12(b)(6), courts "need not accept "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments.").

In the end, Plaintiffs' allegations cannot support individual capacity liability. They seek to impose personal liability upon Rogers based on the position he once held in government and not for any personal actions of his that violated their clearly established constitutional rights. Accordingly, assuming the Court does not does dismiss the claims in Counts 7 and 8 against Rogers under Rule 12(b)(1) or Rule 12(b)(5), such claims should nevertheless be dismissed under

Rule 12(b)(6) on qualified immunity grounds, as Plaintiffs fail to plead plausible *Bivens* claims

against him.[7]

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that this Court grant its

Motion and dismiss all of Plaintiffs' claims.

Robert K. Hur
United States Attorney


By: _____/ s /_____
Neil R. White
Assistant United States Attorney
U.S. Courthouse
6500 Cherrywood Lane, Second Floor
Greenbelt, Maryland 20770
(301) 344-4433

Counsel for Defendants

OF COUNSEL:
Mary E. Johnston
Litigation Attorney
Office of General Counsel
National Security Agency

---

[7]Plaintiffs' *Bivens* claims are also subject to dismissal because implying a *Bivens* cause of action here would require the extension of the extremely limited *Bivens* remedy to a context that is substantially different, in several meaningful ways, from any context in which the Supreme Court has ever recognized an implied constitutional tort action. *See Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Moreover, the incidents alleged in the Complaint date back to 2003, years before the Complaint was filed. *E.g., Major v. Forster*, 2012 WL 292186, at *3 n.12 (D. Md. Jan. 30, 2012) (collecting authorities and concluding that there is a three-year statute of limitations for civil rights actions arising in Maryland under *Bivens*); *Arawole v. Gaye*, 2002 WL 32356684. at *1 (D. Md. Feb. 5, 2002), *aff'd*, 46 F. App'x 206 (4th Cir. 2002).