**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| LEAH CAMPER, et al., | |
| Plaintiffs, | Civil No. 1:18-cv-01794-PWG |
| | Judge Paul W. Grimm |
| v. | |
| NATIONAL SECURITY AGENCY, et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS**

The Plaintiffs herein, Leah Camper and Atlee Camper, through undersigned counsel hereby oppose some of the arguments made in the Motion to Dismiss filed by the Defendants herein, National Security Agency (NSA, or the "Agency") and its former Director, Michael S. Rogers, and concede others in the interest of judicial economy. The Defendants contend in their Memorandum in Support of their Motion to dismiss that the Plaintiffs' allegations in their Complaint are frivolous and that their Privacy Act claims cannot proceed due to the fact that Plaintiff Leah never asked to correct or amend her records, *inter alia*. While Plaintiffs disagree that their complaint is frivolous and that Plaintiff Leah did not ask to correct or amend her records, the Defendants' other contentions regarding the Federal Tort Claims Act (FTCA) and *Bivens'* actions are dispositive, and therefore, the Plaintiffs seek relief to attempt to cure the defects of their Complaint.

Moreover, the Court probably has picked up on the fact that these Defendants do not deny that the Plaintiffs have been intruded upon and surveilled, or that the Agency participates in this type of conduct against individuals such as the Plaintiffs. Given the allegations Plaintiffs allege in

this case, and Americans views on government surveillance,[1] it seems reasonable to ask the Defendants to produce an Agency official that can testify in an affidavit that the Agency (nor any of its contractors) does not engage in the type of surveillance and intrusions alleged in the Complaint, and specifically have not done so against the Plaintiffs.

## STANDARDS OF REVIEW

A court that is deciding whether a FRCP Rule 12(b)(1) should be granted "must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Hawkins v. Washington Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 100 (D.D.C. 2018) (quoting *Jeong Seon Han v. Lynch*, 223 F.Supp.3d 95, 103 (D.D.C. 2016)) (internal quotation marks and citation omitted). However, a Court should strictly evaluate those allegations as compared to how it accesses the allegations under Rule 12(b)(6). *Hawkins*, 311 F. Supp. at 100 (citing *Lynch*, 223 F. Supp. at 103).

In regard to Rule 12(b)(6), the Supreme Court has stated: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'…A claim has factual plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). In addition, that Court has stated that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

---

[1] Over half of Americans, according to a Pew Research poll, think it is "unacceptable for the government to monitor the communications of U.S. Citizens". Abigail Geiger, How Americans have viewed government surveillance and privacy since Snowden leaks, PEW RESEARCH CENTER, available at https://www.pewresearch.org/fact-tank/2018/06/04/how-americans-have-viewed-government-surveillance-and-privacy-since-snowden-leaks/ (last accessed Mar. 27, 2019).

## ARGUMENT

As a preliminary matter, the Plaintiffs would point out two fundamental rights that are recognized by the Supreme Court. Those rights are the right to petition the government for ones' grievances and the right to have access to the courts. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (citations and quotations omitted) ("The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot…lightly impute to Congress an intent to invade these freedoms….The same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government. Certainly the right to petition extends to all departments of the Government.")

The Plaintiffs' case is inherently one about the right to petition the government to redress their grievances and accessing the courts. They are complaining about illegal conduct committed by employees, contractors, and agents of the National Security Agency (NSA), and are suing the NSA and its former director for relief as a result of that illegal conduct.

I.    **The Defendants' Argument that this Case is Frivolous Inaccurately Compares the Facts of the Instant Case to Cases they Cite and Ignores Related Cases and News Stories on the NSA's Illegal Activities.**

The Defendants' first argument revolves around the fact that the Plaintiffs' Complaint is frivolous and lists "unconnected (and largely undated) events" to support its causes of action. Defs.' Mem. in Supp't Mot. Dismiss 8-9 [hereinafter Mem. in Supp't]. They also cite several cases to buttress their argument that this case should be dismissed on Rule 12(b)(1) grounds. *Id.*[2]

The first problem with Defendants' argument is that it relies on generalizations to argue that the Complaint should be dismissed. For example, they argue that allegations like those

---

[2] Notably absent from the Defendants' Memorandum and in their affidavits is any explicit denial of the surveillance activities and intrusions described by the allegations brought by Plaintiffs.

presented in the instant case where a plaintiff alleges that "a federal agency has engaged in unlawful surveillance or wiretapping activities have been repeatedly dismissed as 'fantastic' or 'delusional'." *Id.* at 7.

While many of the cases that involve unlawful surveillance by government agencies have been dismissed on those or similar grounds, those cases involve *prima facie* inconceivable allegations unlike those presented here. In the first case the Defendants rely on, *O'Connor v. United States*, the Court dismissed a case where the Plaintiff alleged that thousands of DEA agents were monitoring him at any one time and that magazines and newspapers he was seeing contained headlines that he perceived were intended to distort his frame of mind. 159 F.R.D. 22, 24-25 (D. Md. 1994).

Another case that the Defendants rely on involved farfetched allegations against celebrities, entertainers, the Department of Justice, and numerous others, for invasion of privacy and violations of federal wire communications laws, *inter alia*. *See O'Brien v. U.S. Dep't of Justice*, 927 F. Supp. 382, 383-84 (D. Ariz. 1995). These allegations included the idea that the defendants allegedly "installed electronic and hi-tech satellite equipment upon Plaintiff's residential telephone lines and anywhere Plaintiff resides in order to abuse, punish, persecute, victimize, orchestrate and conduct criminal, sadistic… attacks… to cause injurious harm and sickness to the Plaintiff, **contaminating her with vile germs in her throat and lungs**." *Id.* at 385 (emphasis added). Given how divorced from reality and incomprehensible those allegations were, and likely due to the fact that the plaintiff had filed two other similar cases prior to that one, the Court easily dismissed that case. *Id.* at 384-85. This is not the situation presented herein.

Defendants use these types of cases to illustrate that the Plaintiffs' claims fall into the same category, i.e. this case is just as crazy as those and therefore it should be similarly dismissed. But

the allegations here are much more probable than the alleged facts in those cases. For example, Plaintiffs allege that Plaintiff Leah met with an NSA recruiter (Mona Martin) on her graduate school campus of University of Detroit Mercy around the same time that she had applied for a job with the CIA (Central Intelligence Agency). Compl. ¶¶ 19-20. After that point, strange occurrences began to happen as detailed subsequently in the Complaint and in Plaintiff Atlee Camper's affidavit (Plaintiffs' Exhibit H to their Complaint).

These occurrences (e.g., break ins, theft, being approached by strange individuals) (*see* Compl. ¶ 13) during a 15-year period are much more within the realm of possibility than the allegations contained in the cases the Defendants rely upon in that they do not relate to being surveilled by thousands of NSA agents or exposing Plaintiff Leah to "vile germs". Plaintiffs have alleged that the NSA and potentially the FBI have each create a false database pertaining to Plaintiff Leah, which may be the reason for the surveillance she has alleged. *See, e.g.*, Compl. ¶ 53. Without having access to these records, or at least some correspondence from the NSA confirming whether they have maintained a record of her since around 2003, there is no way to know why she is being surveilled or remedy it. With no connections to terrorism or some threat to national security, an American citizen such as Plaintiff Leah should be able to inquire of a government agency about records the agency has concerning them and clear up any issues that are contained therein. *See R.R. v. Dep't of the Army*, 482 F. Supp. 770, 774 (D.D.C. 1980) ("Even beyond the domain of the Privacy Act, it is well settled that courts in their equitable discretion may order inaccuracies removed from government records where necessary to vindicate rights secured by statute or by the Constitution.")

As alleged in the Complaint, Plaintiff Leah and her mother (Plaintiff Atlee) have both experienced unusual and intrusive behavior perpetrated by people they have reason to believe are

affiliated with the NSA. To dismiss this complaint as frivolous would require this Court to completely ignore Plaintiffs' allegations and effectively make it appear that mother and daughter are both similarly imagining the events they have alleged.

Plaintiffs would ask this Court to look at their claims within the context of the cases being brought against the NSA over the past decade. While cases being brought against the NSA for alleged conduct by their officials and contractors who are individually surveilling citizens are usually quickly disposed of as being frivolous (as the Defendants have cited), there are plenty of cases that have been brought and that are currently being allowed to proceed against the Agency for alleged widespread illegal surveillance. *See*, *e.g.*, *Wikimedia Foundation v. National Security Agency*, 857 F.3d 193 (4th Cir. 2017); *Jewel v. National Security Agency*, 673 F.3d 902 (9th Cir. 2011).

Additionally, in an opinion by the court responsible for reviewing NSA's surveillance operations—the Foreign Intelligence Surveillance (FISA) Court—back in 2011, the Court recited admissions by the Agency that it had been engaging in the acquisition of massive amounts of internet data, and, in doing so, accidentally acquired data from non-targeted American citizens. Mem. Op. at 30, 32, 41 (FISA Ct. October 2011), available at: https://www.documentcloud.org/documents/4522989-Fisc-Opinion-Oct-2011.html. The Court then explained that the magnitude of the NSA's acquiring of information from people who are considered non-targets is "substantial", is a "very large number", and is protected by the Fourth Amendment. *Id.* at 30, 32, 41, 72-73, 78-79; *see also* Ryan Gallagher & Henrik Moltke, The Wiretap Rooms: The NSA's Hidden Spy Hubs in Eight U.S. Cities, THE INTERCEPT, available at https://theintercept.com/2018/06/25/att-internet-nsa-spy-hubs/ (last accessed Mar. 27, 2019).

To the point of widespread illegal surveillance by the NSA, generally, the publishing of previously classified NSA documents by Edward Snowden back in 2013 revealed how powerful the NSA has become in terms of surveilling people domestically. For example, some of the documents he revealed demonstrated how the Agency surreptitiously obtained access to millions of Americans internet and phone records. *See* Barton Gellman & Ashkan Soltani, NSA infiltrates links to Yahoo, Google data centers worldwide, Snowden documents say, THE WASHINGTON POST, available at https://www.washingtonpost.com/world/national-security/nsa-infiltrates-links-to-yahoo-google-data-centers-worldwide-snowden-documents-say/2013/10/30/e51d661e-4166-11e3-8b74-d89d714ca4dd_story.html?utm_term=.7990e330203d (last accessed Mar. 22, 2019).

Given the fortuitous discovery of the previously unknown part of NSA's bulk surveillance program, it is reasonable for an American citizen to question what other programs the NSA has been conducting in this country over the same time span. Thus, it does not seem like an illogical leap for this Court to reasonably infer that the NSA, possibly in conjunction with other law enforcement and intelligence agencies, has directed officials, agents, and/or even contractors, to surveil citizens in person based on the citizen's background or record.[3]

Moreover, a case where similar facts were alleged as those alleged in the instant complaint was recently brought in this Circuit. In *Attkisson v. Holder*, the Plaintiffs brought suit against various government officials and companies for intrusions into their electronic devices. No. 1:17-cv-364, 2017 WL 5013230 (E.D.Va. Nov. 1, 2017), *aff'd*, No. 18-1677, 2019 WL 1292886 (4th Cir. Mar. 21, 2019). While their case was ultimately dismissed for various reasons (e.g., court's declining to extend *Bivens'* liability to this case's context), none of those reasons included the fact

---

[3] On this point, Plaintiffs would also ask this Court for permission to conduct limited discovery to ascertain the identity of the specific individuals who have been surveilling and harassing the Plaintiffs, and subsequently allow them to amend their complaint to address claims against these specific individuals.

that the complaint was frivolous or speculative. *See id.* at \*8. This was the case even despite the fact that Plaintiffs alleged that the Defendants were responsible for their computers "turning on and off at night" and interfering and damaging with their phone lines, *inter alia*. *Id.* at \*2, \*3.

Hence, it should not be deemed to be completely out of the realm of possibility that the Plaintiffs' have alleged viable causes of action. Plaintiff Leah has similarly alleged issues with her computer as a result of actions committed by government officials, and as such, this case should not be dismissed on the basis of it being too speculative. *See, e.g.*, Compl. ¶¶ 18, 20, 26 (computer was hacked; computer redirected to NSA's website and contains something different on the screen from when she was last on; passwords were changed without her knowledge).

**II.**     **Given that the Plaintiffs did not bring their claims under the FTCA, Plaintiffs would ask this Court to stay the case to allow them to file an administrative FTCA claim.**

The Defendants appear to correctly cite to various cases for the proposition that the Plaintiffs were required to bring their tort claims under the Federal Tort Claims Act (FTCA) and exhaust their administrative remedies before they filed the instant lawsuit. Mem. in Supp't 10-12. As such, Plaintiffs, in the interest of judicial economy, will concede the Defendants' arguments on those points.

Plaintiffs would ask the Court, however, for leave to stay the instant case pending the ability of the Plaintiffs to file an administrative FTCA complaint with the NSA in Maryland or in Mississippi, the place where a substantial amount of the conduct alleged occurred and is still occurring. This would allow them to satisfy the administrative requirement necessary for them to bring claims against the government under the FTCA (*see* 28 U.S.C. § 2675(a)) and allow them to identify the individuals who have been responsible for the horrendous conduct they allege.

Alternatively, the Plaintiffs would ask this Court to dismiss their case without prejudice to allow them to satisfy the exhaustion requirement.

Case 1:18-cv-01794-PWG  Document 24  Filed 03/29/19  Page 9 of 12

**III.**    **Plaintiff Leah should be allowed to proceed on her Privacy Act Claim because she was never given a chance to review the NSA's records pertaining to her.**

In their Motion to Dismiss and in an affidavit, the Defendants lay out and discuss the various letters Plaintiff Leah exchanged with NSA officials about her records. Mem. in Supp't 14-16; Defs.' Ex. 2, Dec. of Steven Thompson.

While Plaintiff Leah never explicitly asked to amend or correct her records, her request and appeals should have been construed to do so. In her original request, she asks the Agency "if I was being investigated by the NSA", and later writes "I just want to know what is going on with your group in relation to me". Defs.' Ex. 2A, June 10, 2015 FOIA Request. Later, in her response to the denial of her request for records under the Privacy Act, she stated that she was "simply trying to understand the less than desirable activities that have taken place in my life after applying for a computer position". Defs.' Ex. 2G, June 27, 2016 Privacy Act Appeal.

Taken together, and in the context of the instant action, Plaintiff Leah and her mother have clearly attempted to access the records the Agency has pertaining to them in order to determine if the Agency has placed inaccurate information in those records that might explain why NSA officials are surveilling her. Given that her and her mother's complaint essentially centers on the NSA having an incorrect profile which they are using to conduct illegal surveillance of them, Plaintiffs are asking for the Agency to turn over these files to determine what is in them that needs to be corrected or amended.

Courts have spoken on the importance of the Privacy Act (5 U.S.C. § 552a). For example, in *R.R. v. Department of the Army*, the United States District Court for the District of Columbia stated:

> "The language of the [Privacy] Act establishes that an individual may bring a civil action to compel the correction of inaccurate records… Remedial legislation should be liberally construed in order to effect its obvious purpose. In this instance, the statute vests broad discretion in a district court to … order the agency to amend the individual's record in

9

accordance with his request or in such other way as the court may direct." 482 F. Supp. 770, 773-74 (D.D.C. 1980) (internal quotations and citations omitted).

The Defendants argue that there is no record that Plaintiff Leah ever tried to correct or amend her any of her records maintained by the Agency. Mem. in Supp't 14. However, Plaintiff Leah could not specifically ask to correct or amend her records if she did not know specifically what was in them. Therefore, she should be given the chance at this stage to review all of the records that the Agency has on her in order to decide if she wants to amend or correct those records, and this Court should have the discretion to grant that request.

**IV.    Plaintiffs acknowledge that their *Bivens* claims cannot succeed in their current state and therefore seek leave to amend their Complaint to add "John Does".**

Upon reviewing the Defendants' arguments with respect to the Plaintiffs' *Bivens* claims, it appears that their claims, in their current form, cannot proceed as is due to individuals not being named as defendants. As such, Plaintiffs would ask this Court for leave to amend their Complaint in order to allow them to name the individual defendants who are responsible for committing illegal surveillance and intrusions into the Plaintiffs' privacy in violation of the Fourth Amendment, i.e., bringing claims against "John Does". The reason that these new defendants would be unnamed is because the Plaintiffs are not aware of who exactly has been hired from the NSA to perpetrate the intrusions and electronic surveillance detailed herein.

*Query*: Is it too much of a burden for the NSA to tell these Plaintiffs that they have not been engaging in intrusions or electronic surveillance?

**CONCLUSION**

For the reasons stated herein, the Plaintiffs ask that their complaint not be deemed frivolous, that their Privacy Act claim be allowed to proceed, and that they be allowed to amend their complaint, or, in the alternative, stay the case until Plaintiffs can proceed with their FTCA administrative claims.

Respectfully,

/s *Martin F. McMahon*
Martin F. McMahon & Associates
1717 K Street, NW, Suite 900
Washington, D.C., 20006
Federal Court Maryland Bar No. 02592
mm@martinmcmahonlaw.com
202-862-4343

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 29, 2019, I filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send notice of this filing to all parties registered to receive such notice.

*<u>/s/ Martin F. McMahon</u>*
Martin F. McMahon, Esq.
