**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LEAH CAMPER, *et al.*,

Plaintiffs,

v.

NATIONAL SECURITY AGENCY, *et al.*,

Defendants.

Case No. 1:18-cv-01794-PWG

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## I. INTRODUCTION/REMAINING CLAIMS

Plaintiffs are Leah Camper ("Camper") and her mother, Atlee Camper. This lawsuit stems from their belief that they have been the subject of a "campaign" of warrantless surveillance and constant harassment orchestrated by the National Security Agency ("NSA") for over 15 years. In their initial memorandum, Defendants, the NSA and its former Director, Admiral Michael S. Rogers ("Rogers"), demonstrated that all counts brought against them in Plaintiffs' Complaint should be dismissed.

Specifically, Defendants showed that Plaintiffs' unsupported allegations of a government-directed plot against them are subject to dismissal under Fed. R. Civ. P. 12(b)(1) as speculative, implausible, and frivolous (ECF 19-1, at 7-9); that Plaintiffs failed to exhaust their administrative remedies to advance common law tort claims under the Federal Tort Claims Act ("FTCA") (*id.* at 10-13); that Camper's claims under the Privacy Act of 1974 should be dismissed as moot and for failure to exhaust administrative remedies (*id.* at 13-17); that there is no waiver of sovereign immunity for their constitutional claims against NSA or Rogers in his official capacity (*id.* at 17-18); and that any individual capacity claims against Rogers under the implied constitutional tort theory of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), should be

dismissed for failure to effect service of process or because they failed to plead plausible claims under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). *Id.* at 18-23.

In response, Plaintiffs concede the correctness of the "dispositive" legal arguments advanced by Defendants. *See, e.g.*, ECF 24, at 1. In particular, Plaintiffs: (1) concede their tort claims are governed by the FTCA and acknowledge that they failed to present an administrative tort claim, as 28 U.S.C. § 2675 requires, *id.* at 1, 8; (2) offer no factual challenge or argument responsive to Defendants' demonstration that Camper's "access claim" under the Privacy Act is moot; (3) agree that Camper "never explicitly asked" the NSA "to amend or correct her records," *id.* at 9; and (4) concede that they have failed to state any valid constitutional claims in Counts 7 and 8 (and do not challenge their failure to serve Defendant Rogers). *Id.* at 1, 10.

On April 4, 2019, this Court entered a Paperless Order recognizing Plaintiffs' admission with respect to their failure to exhaust their tort claims. Accordingly, the Court dismissed Counts 1, 2, 3, 5, and 6, without prejudice. ECF 25. Notably, the Court properly rejected Plaintiffs' request to simply "stay" the case "pending the ability of the Plaintiffs to file an administrative FTCA complaint with the NSA in Maryland or in Mississippi." ECF 24, at 8. It is established that there is no jurisdiction for district courts to hold an FTCA claim in abeyance while exhaustion of remedies is pursued. *E.g., Plyer v. United States*, 900 F.2d 41, 42 (4th Cir. 1990) ("Since the district court had no jurisdiction at the time the action was filed, [the Court] could not obtain jurisdiction by simply not acting on the motion to dismiss until the requisite period had expired.") (citing *Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir. 1981)).[1]

[1] Defendants observed in their initial memorandum that, even if Plaintiffs pursued administrative exhaustion at this point in time, Plaintiffs' tort claims (dating back to 2003) would be "forever barred" by the two-year statute of limitations for FTCA claims set forth in 28 U.S.C. § 2401(b). ECF 19-1, at 12 n.2. Plaintiffs do not address this glaring limitations problem in their opposition, but it will be an issue should they pursue exhaustion and then file another action.

Following the Court's April 4 Order, only Camper's Privacy Act claims in Count 4 and Plaintiffs' plea to be granted leave to amend their constitutional claims remain for adjudication. As demonstrated below, Camper has failed to show that her Privacy Act claims survive dismissal. Moreover, Plaintiffs' suggestion that they could—based on the same fantastic allegations in their current Complaint—plead viable *Bivens* claims by substituting "John Doe" defendants (presumably unknown individuals that they will aver are somehow affiliated with the NSA) for named defendants in an amended complaint should be rejected as futile.

## II. ARGUMENTS IN REPLY

### A. COUNT 4 SHOULD BE DISMISSED BECAUSE CAMPER FAILS TO ADDRESS THE NSA'S EVIDENCE THAT HER ACCESS CLAIM UNDER THE PRIVACY ACT IS MOOT AND SHE CONCEDES THAT SHE NEVER REQUESTED AMENDMENT OF AN INACCURATE OR INCOMPLETE RECORD

Supported by the 20-page Declaration of Steven E. Thompson (ECF 19-4), the NSA detailed the history of its communications with Camper about records and showed in its initial memorandum that Camper's "access claim" under 5 U.S.C. § 552a(g)(1)(B) is moot because the NSA properly responded to Camper's requests and produced all responsive and non-exempt records. ECF 19-1, at 15-17.

Camper does not contest the facts presented concerning her requests for information and the NSA's responses thereto. ECF 19-4, at ¶¶ 11-23. Nor does she address, let alone challenge, the NSA's assertion that Section 6 of the National Security Act of 1959, 50 U.S.C. § 3605, 18 U.S.C. § 798, Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024, and Executive Order 13526 preclude the NSA from disclosing certain

---

Plaintiffs also do not aver that any particular "unusual and unexplained occurrence" or "strange random encounter" described in their Complaint took place in the District of Maryland or that they reside in the District of Maryland. Consequently, it is unclear that this District is the proper venue for their FTCA claims, even such claims were exhausted or could be timely. 28 U.S.C. § 1402(b).

information (or even—via a *Glomar* response—that the NSA is precluded from confirming or denying the existence of information) in response to Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), or Privacy Act requests. *See* ECF 19-4, at ¶¶ 7-10, 24-39; *see also Igoshev v. Nat'l Sec. Agency/Cent. Sec. Serv.*, ELH-17-1363, 2018 WL 2045530, at *6-8 & n.2. (D. Md. May 1, 2018) (Judge Hollander reciting these authorities as partial justification for granting the NSA summary judgment in a FOIA case), *aff'd*, 746 F. App'x 221 (4th Cir. 2018).  And her opposition memorandum is bereft of any argument that the NSA improperly applied any of the protections against disclosure to her requests, as described by Mr. Thompson. ECF 19-4, at ¶¶ 40-58.

Despite her wholesale failure to challenge factually or legally the NSA's argument that her access claim should be dismissed as moot, Camper nevertheless repeats that she is "asking for the Agency to turn over these files," and urges the Court that "she should be given the chance at this stage to review all of the records that the Agency has on her." ECF 24, at 9.  The Court may readily conclude that Camper has abandoned her access claim by not responding to the substance of the NSA's mootness argument, resulting in its dismissal. *See, e.g., Watkins v. Washington Post*, PWG-17-818, 2018 WL 805394, at *2 (D. Md. Feb. 9, 2018) (collecting cases) ("Notably, when a defendant's motion to dismiss a complaint states specific deficiencies that warrant dismissal, and presents supporting legal arguments, it is the plaintiff's obligation to respond substantively to address them.  Failure to respond to the defendants' arguments constitutes abandonment of those claims. [ ] Any abandoned claims are subject to dismissal with prejudice.").

Even if the Court does not deem Camper's access claim abandoned, she has failed to provide legally sufficient argument that the NSA has not fully discharged its disclosure obligations under the Privacy Act when responding to Camper's request.  Frankly, without even addressing the authorities restricting the disclosure of such information by NSA, Camper just invites the Court

to ignore them. As such, Camper fails to satisfy her burden of demonstrating subject-matter jurisdiction and all aspects of Count 4 seeking to compel further disclosure of NSA records should be dismissed as moot.

Camper also alleges in Count 4 of her Complaint that she "believes that various NSA officials have made up false records," "that the records the NSA and the Mississippian FBI maintains contain damaging and false information," and that, as relief, she seeks the deletion of such unspecified "false and defamatory material." ECF 1, at ¶ 53 & *ad damnum* clause. While Camper did not identify a single "false and defamatory" record allegedly maintained by the NSA in a Privacy Act "system of records,"[2] or identify a statutory basis for the relief requested, the NSA liberally construed her claim as an "amendment claim" provided by 5 U.S.C. § 552a(g)(1)(A). *See* ECF 19-1, at 13-14.

When doing so, however, and after canvassing her correspondence with the NSA, it was clear that Camper never requested the amendment of any record and thus, she did not exhaust her remedies to pursue an amendment claim in federal court. *Id.* at 14-15 (describing the jurisdictional nature of the statute and summarizing the details of the Thompson Declaration concluding that Camper never sought to amend or correct any record maintained by the NSA and never pursued an administrative appeal from action or inaction related to an amendment request).

In response, Camper concedes the fundamental point that she "never explicitly asked to amend or correct her records." ECF 24, at 9. Her jurisdictional failure to exhaust notwithstanding, Camper insists that her amendment claim should be allowed to proceed since—in her view—she

[2]An amendment claim permits an individual to seek correction of "any information which the individual asserts is not accurate, relevant, timely, or complete." 5 U.S.C. § 552a(d)(2). It is unclear how Camper's allegations of a vast campaign of surveillance and harassment directed against her suffice from a pleadings perspective to identify a single inaccurate or incomplete record maintained by the NSA in a Privacy Act system of records.

never had the opportunity to review the NSA's records. *Id.* at 9-10. Camper's argument fails for two principal reasons.

*First*, as discussed above, she mounts no challenge that her access claim is moot because the NSA disclosed all responsive and non-exempt records. Put in statutory terms, she argues that she should not need to make an amendment request under 5 U.S.C. § 552a(d)(2) because the agency failed to permit access to her own records under § 552a(d)(1). But the NSA fully discharged its obligation of access under the Privacy Act. *See, e.g.*, ECF 19-1, at 15-17; ECF 19-4. As such, Camper's argument places the cart before the horse and cannot serve to justify her failure to exhaust.

*Second*, even if she properly called into question the NSA's response to her access request (and she plainly has not though her opposition), the Privacy Act—unlike FOIA—contains no "constructive exhaustion" provision. *Pollack v. DOJ*, 49 F.3d 115, 116 n.1 (4th Cir. 1995); *Haley v. SSA*, JKB-14-3775, 2015 WL 3745618, at *3 (D. Md. June 11, 2015).

Where, as here, exhaustion of administrative remedies is statutorily mandated by 5 U.S.C. § 552a(g)(1)(A), Camper's failure to exhaust administrative remedies deprives the district court of jurisdiction to hear the claim. *Olivares v. NASA*, 882 F. Supp. 1545, 1552 (D. Md. 1995) ("exhaustion of the administrative remedies provided in § 552a(d) of the Act is a prerequisite to bringing a civil suit to compel amendment of the record"), *aff'd per curiam*, 103 F.3d 119 (4th Cir. 1996); *Jagun v. Rodriguez*, PJM-15-2230, 2016 WL 4124225, at *8 (D. Md. Aug. 3, 2016) (citing the statute and finding no jurisdiction for an amendment claim); *Kursar v. Transportation Sec. Admin.*, 581 F. Supp. 2d 7, 18 (D.D.C. 2008) (citations and quotations omitted) (explaining, in the context of an amendment claim, that "exhaustion is an express statutory prerequisite to the exercise

of jurisdiction by a federal court," which cannot be excused "on the basis of futility"), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011).

### B. PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT TO ADD "JOHN DOE" *BIVENS* DEFENDANTS SHOULD BE DENIED

Plaintiffs concede all of the arguments made for dismissal of the constitutional claims set forth in their Complaint. ECF 24, at 10. Accordingly, Counts 7 and 8 may be dismissed forthwith.

Despite failing to take advantage of the explicit and generous authority provided by the Federal Rules to amend their Complaint as of right in response to Defendants' motion, Fed. R. Civ. P. 15(a)(1)(B), and in the form of an opposition memorandum, Plaintiffs now urge the Court not only to grant them leave to amend so they can add "John Doe" *Bivens* defendants, ECF 24, at 10, but also "ask this Court to conduct limited discovery" so they can identify "the specific individuals who have been surveilling and harassing the Plaintiffs." *Id.* at 7 n.3.

Defendants' initial briefing on their motion to dismiss obviously was directed to the extant Complaint and, based on Plaintiffs' concessions, will result in the dismissal of the claims advanced in Counts 7 and 8 against the NSA and its former director. In addition to the fact that Plaintiffs' request for leave in this posture puts Defendants in the position of addressing a proposed amended complaint they have not seen (and one which purportedly will be directed at other unknown and unnamed individuals), it potentially requires explication of arguments for the first time in a reply memorandum, as opposed to a party's principal brief.

If the Court elects to adjudicate Plaintiffs' entreaty for leave to amend in its present posture, *contra* Fed. R. Civ. P. 15(a)(2); D. Md. L.R. 103.6, their request for leave to amend for the stated purpose of adding "John Doe" defendants should be denied due to futility. "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: A district court may deny leave if amending the complaint would be futile – that is, if

the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown* & *Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)) (internal quotation marks omitted).

Here, assuming (as the present Defendants must do at this point) that Plaintiffs' proposed amendment retains the same factual allegations as their initial Complaint and simply substitutes an unknown number of "John Does" as defendants, such allegations would be "clearly insufficient or frivolous on its face," *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986), and a complaint so amended could not withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

Plaintiffs' claims cannot be saved by amendment in the first instance because, for the same reasons addressed in Defendants' initial Memorandum, these future claims should be dismissed under Fed. R. Civ. P. 12(b)(1) as frivolous. Even with the benefit of counseled argument, Plaintiffs utterly fail to distinguish their own decades-long allegations of vast government-directed surveillance and wiretapping activities in any meaningful way from those dismissed by this Court and others under Fed. R. Civ. P. 12(b)(1). *See* ECF 19-1, at 7-9 (citing *O'Connor v. United States*, 159 F.R.D. 22, 24-25 (D. Md. 1994), *aff'd*, 54 F.3d 773 (4th Cir. 1995) (Table), and collecting other authorities dismissing as "fantastic" or "delusional" citizen complaints based on federal agencies engaging in unlawful surveillance or wiretapping activities); ECF 24, at 4-6.

Plaintiffs ignore the common theme in the cases dismissed as insubstantial—namely, the given plaintiff's paranoid delusions that the government is always watching and following him or her through unknown means and that government agents are routinely manipulating their lives (whether through strangers or acquaintances). This theme, however, is the gravamen of Plaintiffs' own allegations of surveillance and harassment in this case. Plaintiffs attempt to diminish the

obvious parallels by drawing Court's attention to what they believe are their more conceivable allegations ("break ins, theft, being approached by strange individuals"). *Id.* at 5. Of course, while such events generally may be considered plausible occurrences, they are frivolous in this context due to Plaintiffs' stated belief that everything they allege has been committed or directed by NSA agents and operatives as part of a concerted campaign against them for over 15 years.

In the same vein, Plaintiffs' efforts (ECF 24, at 6-8) to equate their own allegations (including such claims as the NSA being responsible for sending them on non-existent job interviews, changing their computer and phone passwords, infiltrating their own family members, engaging in burglary throughout the country over a long period of time, causing false criminal charges to be leveled against them, and directing "numerous individuals" to converse with them) with publicized news reports of, litigation concerning, and public opinion of the NSA's bulk surveillance activities are not well-taken.[3]

[3]On this point, Plaintiffs also misplace reliance on the Fourth Circuit's recent decision in *Attkisson v. Holder*, ___ F.3d ___, 2019 WL 1292886, at *10 (4th Cir. Mar. 21, 2019), which—as noted below—fully <u>supports</u> the futility of permitting leave to amend in this case to add "John Doe" *Bivens* defendants because of *Ziglar v. Abbasi* 137 S. Ct. 1843, 1857-58 (2017). *See* ECF 19-1, at 23 n.7; *Attkisson*, 2019 WL 1292886, at *11-12. Plaintiffs tout the fact that, although the case was dismissed completely as to the federal government defendants, it was not dismissed under Fed. R. Civ. P. 12(b)(1). ECF 24, at 7-8. If the Court accepts Plaintiffs' invitation to review the detailed facts of that case, it will note that the leading plaintiff was an investigative journalist for CBS News who worked on stories that were damaging to the FBI and ATF. 2019 WL 1292886, at *1. After noticing "anomalies" in several electronic devices in her home, she retained an expert to conduct a forensic analysis of her work laptop, which actually revealed "evidence of an unauthorized intrusion, "possibly using software belonging to a government actor." *Id.* at *2. This was followed by CBS retaining its own forensic expert. *Id.* The plaintiffs' complaint also offered "a variety of allegations to link" the events they describe to the listed defendants, *see id.* at *3, whereas Plaintiffs here offer nothing more than their suspicions and belief, however genuine, that the NSA is responsible for all of their allegations. In sum, that the Eastern District of Virginia did not dismiss *Attkisson* as frivolous (as opposed to dismissing on other grounds which were affirmed on appeal) does not somehow render the present Complaint substantial for purposes of Fed. R. Civ. P. 12(b)(1).

Distilled to its essence, despite knowing through the Declaration of Steven E. Thompson that the NSA is prohibited by law from responding (affirmatively or negatively) to their inquiries about its surveillance activities, Plaintiffs insist that their litigation is not frivolous based upon the lack of an express denial from the government. The "failure to deny" by an agency that is prohibited from publicly disclosing its activities is plainly not the standard for pleading plausible constitutional claims and the mere fact that the NSA has not—and cannot—deny Plaintiffs' outlandish claims of government harassment and surveillance will not render justiciable their planned amended claims.

Additionally, if not dismissed as frivolous, under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Plaintiffs' proposed *Bivens* claims against "John Does" would still be subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failing to state plausible claims.

Primarily, the only allegations of the Complaint suggesting a nexus between the various "strange random encounters that [Camper] has no explanation for," ECF 1, at ¶ 14, on the one hand, and the NSA's active involvement therein, on the other, are based entirely on Camper's belief, i.e., they are "bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). As presently drafted, Plaintiffs' Complaint fails to show plausibly how any federal agent or officer (whether named or not)[4]

[4] This Court has previously recognized the propriety of permitting constitutional claims against "John Doe" or institutional defendants for plaintiffs "who otherwise can state a valid claim" by pleading "factual content that allows the court to draw the reasonable inference that the [defendants are] liable for the misconduct alleged." *Hairfield-Ulsch v. Montgomery County, Md.*, PWG-14-2418, 2015 WL 1405421, at *4 (D. Md. Mar. 25, 2015) (quotation omitted). Plaintiffs' failure to include well-pleaded and specific allegations of involvement by any government actors goes far beyond the mere inability to identify such government actors at the onset of litigation and would be fatal to their proposed amended claims. *See id.*

through his or her "own individual actions" violated their constitutional rights. *Contra, e.g., Iqbal*, 556 U.S. at 676. It follows that, if Plaintiffs repackaged their Complaint to name "John Doe" employees of the NSA, such claims as pled would fail to overcome the hurdle of qualified immunity and be dismissed before discovery. *See* ECF 19-1, at 20-21; *Iqbal,* 556 U.S. at 673 (citations omitted).

Even assuming Plaintiffs somehow could satisfy their burden of pleading sufficient personal involvement in a constitutional violation by an individual government agent (which they have failed to do thus far), as the Fourth Circuit recently confirmed, the *Bivens* remedy cannot be extended to claims that one's Fourth Amendment rights have been violated based upon unknown federal agents allegedly unlawfully surveilling their electronic devices. *Attkisson v. Holder*, ___ F.3d ___, 2019 WL 1292886, at *11 (4th Cir. Mar. 21, 2019).

Beyond the aforementioned infirmities, and while most of their allegations are undated, Plaintiffs' claims date back to 2003 – many years before their Complaint was filed. There is a three-year statute of limitations for civil rights actions arising under *Bivens* in Maryland, Michigan, and Mississippi. *E.g., Major v. Forster*, 2012 WL 292186, at *3 n.12 (D. Md. Jan. 30, 2012) (collecting authorities and concluding that there is a three-year statute of limitations for civil rights actions arising in Maryland under *Bivens*); *Rankin v. United States*, 556 F. App'x 305, 310 (5th Cir. 2014) (same for causes of action arising in Mississippi); *Meeks v. Larsen*, 999 F. Supp. 2d 968, 980 (E.D. Mich. 2014) (same for Michigan), *aff'd,* 611 F. App'x 277 (6th Cir. 2015). Accordingly, the vast majority (if not the entirety) of Plaintiffs' proposed amended complaint would be barred by limitations in any event.

The allegations of Plaintiffs' current Complaint fail to support individual capacity liability by any government actor. And while it may be premature to consider Plaintiffs' counsel's proposal

to add unnamed defendants, it is clear that doing so based on the present allegations would fail to avert dismissal under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), and leave to amend should be denied as futile.

## III. CONCLUSION

For the reasons set forth in Defendants' initial memorandum and herein, Defendants respectfully request that the Court grant its Motion and dismiss all of Plaintiffs' claims.

Robert K. Hur
United States Attorney

By: / s /
Neil R. White
Assistant United States Attorney
U.S. Courthouse
6500 Cherrywood Lane, Second Floor
Greenbelt, Maryland 20770
(301) 344-4433

Counsel for Defendants

OF COUNSEL:
Mary E. Johnston
Litigation Attorney
Office of General Counsel
National Security Agency