IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| LEAH CAMPER et al., | * |  |
| Plaintiffs, | * |  |
| v. | * | Case No.: 1:18-cv-01794-PWG |
| NATIONAL SECURITY AGENCY et al., | * |  |
| Defendants. | * |  |

## MEMORANDUM OPINION AND ORDER

This is a lawsuit against the National Security Agency ("NSA") and its former director, Admiral Michael S. Rogers. The plaintiffs, a Mississippi woman and her mother, accuse the agency of orchestrating a long-running campaign to surveil and harass them. Plaintiffs are represented by counsel, who, in response to the agency's motion to dismiss, conceded that most of the claims in the eight-count Complaint either were not justiciable or were improperly pleaded. *See* Opp'n 1, ECF No. 24. Those claims have been dismissed without prejudice. *See* ECF No. 25. Plaintiffs, nevertheless, have pressed on with their lone remaining claim, which seeks a court order pursuant to the Privacy Act of 1974 requiring the NSA to make records available to their lawyer and to delete "all false and defamatory material" those records might contain. Compl. 15, ECF No. 1. They also have asked for leave to amend the Complaint to bring constitutional claims against unknown government officials who might, in theory, be responsible for the alleged invasions of their privacy.

1

I am dismissing the Privacy Act claim for a variety of jurisdictional and merits-based reasons. I also deny the plaintiffs' request for leave to amend their pleading, as I conclude that amendment would be futile. This case therefore will be dismissed.

## FACTUAL BACKGROUND

The Complaint chronicles a series of "troubling incidents" the two plaintiffs claim to have experienced over the past 16 years. Compl. ¶ 13. The plaintiffs, Leah Camper ("Ms. Camper") and her mother, Atlee Camper, say they "believe NSA officials are responsible" for those incidents. *Id.*

The Complaint traces these occurrences to May 2003, when Ms. Camper applied for a job at the CIA. *See id.* A few months later, a professor helped make arrangements for her to meet with NSA recruiters. *See id.* ¶ 2, 19. Neither agency ever offered her a job, and, in fact, the CIA never contacted her in connection with her application. *See id.* ¶ 13. Ms. Camper, though, says "[s]trange incidents" have followed ever since. *Id.* ¶ 20.

Incidents detailed in the Complaint include several "strange[,] random encounters" for which Ms. Camper says she has "no explanation." *Id.* ¶ 14. For example, she says, in 2004, a man who "refused to identify himself" confronted her in a health club, and when she went outside she found her car had been broken into. *Id.* ¶ 23. On another occasion, in 2005, she was approached by a stranger who said he knew she had attended the University of Detroit. *See id.* ¶ 15. Similarly, in 2009, a man she did not know approached her as she made her way to an elevator in a Michigan hospital and asked her a number of politically oriented questions. *See id.* ¶ 14.

The Complaint alleges, more generally, that NSA officials have been monitoring Ms. Camper for the past 14 years and have "followed [her] around the United States."[1] *Id.* ¶ 24. It asserts that "numerous individuals with military backgrounds" have harassed and even insulted her. *Id.* ¶ 30. Ms. Camper also accuses the NSA of stealing or destroying her personal property and regularly interfering with her electronic devices, to the point that she "cannot use her computer, television, or tablet without Defendants' interference." *Id.* ¶ 26. Similarly, she says, "[h]er passwords to her computer, bank accounts, and phones have all been changed without her knowledge or consent." *Id.*

Ms. Camper's mother raises many similar allegations in a declaration enclosed as an exhibit to the Complaint.[2] *See* Atlee Camper Decl., ECF No. 1-10. There, she alleges their "mobile phones are tapped regularly and computers infiltrated"; that their homes "are constantly invaded by [people] we believe are N.S.A. and CIA contractors, with items taken"; and that both women "are followed every where we go, e.g. the doctors, the grocery store, malls, and we were even monitored cross country while my husband and son were fighting cancer and dying." *Id.* ¶¶ 3, 4, 12. She further alleges the NSA was responsible for her daughter's arrest in Georgia on assault and robbery charges. *See id.* ¶ 4. She said her daughter came to understand that the case,

---

[1] In 2006, Ms. Camper reached out to then-Senator Carl Levin's office, complaining that CIA employees were following her and interfering with her efforts to find work. *See* ECF No. 1-6. Senator Levin's office forwarded her letter to the agency, which, in response, asked the senator's staff to "[p]lease advise Ms. Camper that the CIA does not engage in activities such as those described in her correspondence." ECF No. 1-7. Two years later, Ms. Camper similarly asked a Michigan congressman's staff to "check on" the CIA but "was simply told the CIA doesn't engage in that type of criminal activity." Compl. ¶ 16.

[2] This document and other documents attached as exhibits to the Complaint are within the realm of materials I may consider in assessing whether dismissal is appropriate under either Rule 12(b)(1) or 12(b)(6). *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (explaining that courts assessing a Rule 12(b)(6) motion generally may consider documents attached to or incorporated into the Complaint); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (discussing Rule 12(b)(1)).

which later was dismissed, was set up as "a test to find out what her response would be to jail if sent overseas on an assignment for the government." *Id.* ¶ 7.

On June 10, 2015, Ms. Camper submitted a request under the Freedom of Information Act ("FOIA"), asking the NSA for records relating to any possible investigation that might involve her. *See* ECF Nos. 1-4, 19-5. The NSA denied the request, explaining that "the fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 13526." ECF No. 1-4. Ms. Camper appealed the denial, *see* ECF No. 1-5, but her Complaint does not note what, if anything, came of the appeal.[3]

In January 2018, Plaintiffs' counsel sent the NSA's general counsel a letter requesting "verification from the NSA of any record of Ms. Camper or surveillance of her." ECF No. 1-13; *see* Compl. ¶ 31. The letter explained, "We are trying to head off a lawsuit that will needlessly consume lots of attorney fees." ECF No. 1-3. The NSA did not respond, *see* Compl. ¶ 31, and this lawsuit followed. The Complaint asserted eight claims: (1) negligence, (2) intentional infliction of emotional distress, (3) invasion of privacy under common law, (4) violation of the Privacy Act, (5) invasion of privacy under Michigan common law, (6) invasion of privacy under Mississippi common law, (7) deprivation of procedural due process, and (8) violation of constitutional rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Compl. ¶¶ 32-72.

The NSA and Mr. Rogers (collectively, "Defendants") moved for dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss, ECF No. 19. As a general matter, the motion argued that the Court lacks jurisdiction over Plaintiffs' "speculative,

---

[3] Exhibits attached to Defendants' motion to dismiss show that the agency denied the appeal on February 9, 2017. *See* ECF No. 19-9.

implausible, and frivolous" claims. Defs.' Mem. 3, ECF No. 19-1. It then argued that each of Plaintiffs' claims would fail in any event for a number of other reasons. For one thing, it said, Plaintiffs failed to exhaust their administrative remedies with respect to their common law tort claims (Counts 1-3, 5, and 6), as required by the Federal Tort Claims Act ("FTCA"). *See id.* The motion further argued that sovereign immunity barred the constitutional claims (Counts 7 and 8) against the NSA and Mr. Rogers (insofar as they sought to hold him liable in his official capacity), and that there was no basis for holding Mr. Rogers liable in his personal capacity. *See id.* at 4.

Plaintiffs' response to the motion contained a number of concessions, acknowledging that Defendants' "contentions regarding the Federal Tort Claims Act (FTCA) and *Bivens*[] actions are dispositive." Opp'n 1. Consequently, I dismissed the tort claims (Counts 1-3, 5, and 6) without prejudice.[4] *See* ECF No. 25. And though I did not address the matter at the time, I am now dismissing the two constitutional claims (Counts 7 and 8) for the same reason.

Plaintiffs have maintained that their Privacy Act claim (Count 4) should proceed, asserting that the NSA has yet to give Ms. Camper a chance to review its records relating to her. *See* Opp'n 9. Separately, they have asked for leave to amend their complaint so as to reassert their *Bivens* claims against unnamed individual defendants. *See id.* at 10. The defendants would be identified as "John Doe" because "Plaintiffs are not aware of who exactly has been hired from the NSA to perpetrate the intrusions and electronic surveillance detailed [in the Complaint]." *Id.*

---

[4] Plaintiffs urged me to stay this case to give his clients time to exhaust their administrative remedies in relation to these claims. *See* Opp'n 8. I denied their request, stating that Plaintiffs were free to pursue their administrative remedies and that, should they exhaust those remedies while this case remained pending, they may file a new action and seek to consolidate it with this one. ECF No. 25; *see Robles v. Beaufort Mem'l Hosp.*, 482 F. Supp. 2d 700, 706 (D.S.C. 2007) (citing *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990)).

Defendants' motion is fully briefed. *See* ECF Nos. 19, 24, 26. No hearing is necessary. *See* Loc. R. 105.6.

## STANDARD OF REVIEW

Defendants have moved for dismissal under both Rule 12(b)(1) and Rule 12(b)(6). A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction, asserting, in effect, that the plaintiff lacks any "right to be in the district court at all." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of establishing the court's subject matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The district court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans*, 166 F.3d at 647).

A 12(b)(6) motion, by contrast, "tests the sufficiency" of the plaintiff's complaint. *Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 677 (D. Md. 2012). Under Rule 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Beyond that, the Supreme Court has held that claims for relief must be "plausible," specifying that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l,*

*Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). A court also may consider matters subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## DISCUSSION

At present, all that remains of the Complaint is Count 4, which seeks injunctive relief under the Privacy Act. I will address this count first. I then will address Plaintiffs' request for leave to file an amended complaint asserting constitutional claims against "John Doe" defendants.

### Privacy Act

Ms. Camper states in the Complaint that she "believes that various NSA officials have made up false records" about her. Compl. ¶ 53. Accordingly, in Court 4, she "requests that an order be entered herein allowing her attorneys to review whatever files the NSA currently maintains of her activities, and that any and all false and defamatory material contained therein be deleted, consistent with the protections afforded [her] by the Federal Privacy Act." *Id.*

I agree with Defendants that Count 4 essentially asserts two distinct claims: one seeking access to records under 5 U.S.C. § 552a(g)(1)(B) and another seeking to amend records under § 552a(g)(1)(A). Defendants' motion addresses these claims separately. I will do the same.

To begin, the Privacy Act restricts federal agencies' authority to produce and maintain records about American citizens and aliens lawfully admitted for permanent residence. *See* § 552a(a)(2), (e)(1)-(2). The statute establishes a procedure by which a person may request access to agency records or seek to amend them. First, subsection (d)(1) requires the agency to permit access "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system." *Id.* § 552a(d)(1). Next, under subsection (d)(2), the agency must

> permit the individual to request amendment of a record pertaining to him and--
> (A) not later than 10 days . . . after the date of receipt of such request, acknowledge in writing such receipt; and
> (B) promptly either--
>   (i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or
>   (ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, [and] the procedures established by the agency for the individual to request a review of that refusal . . . .

*Id.* § 552a(d)(2). Finally, under subsection (d)(3), the agency must permit a person to "request a review" of an agency's refusal to amend a record. *Id.* § 552a(d)(3).

For those who believe the agency has not fulfilled its duties under the statute, the Act creates a cause of action and vests the federal district courts with jurisdiction to hear such claims. *See id.* § 552a(g)(1). Civil remedies authorized by the statute "fall into two categories: equitable relief and monetary relief." *In re Search of 2122 21st Rd. N. Arlington*, No. 12-SW-1002, 2017 WL 4295414, at *2 (E.D. Va. Sept. 26, 2017). Here, Plaintiffs seek equitable relief only, which is available under two circumstances: first, when an agency "makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection," § 552a(g)(1)(A); and, second, when the agency "refuses to comply with an individual request [for access] under subsection (d)(1)," *id.* § 552a(g)(1)(B).

Plaintiffs' plea for access to NSA records comes under § 552a(g)(1)(B). To properly allege a claim of this type, "a plaintiff must show (1) a request for records was made; (2) the request was denied; and (3) such denial or failure to act was improper under the Privacy Act." *Singh v. U.S. Dep't of Homeland Sec.*, No. 12-498-AWI, 2014 WL 67254, at *4 (E.D. Cal. Jan. 8, 2014); *see Biondo v. Dep't of Navy*, 928 F. Supp. 626, 631 (D.S.C. 1995). Here, even if I were to assume

that Plaintiffs have satisfied the first two elements,[5] they clearly have not satisfied the third. Exhibits attached to the Complaint show that the NSA cited a number of legal grounds for denying Ms. Camper's June 2015 access request. *See* ECF No. 1-4. Nowhere, though, does the Complaint allege that any of those stated reasons were improper. *See Bruan v. Agency*, No. 15-18-H-DLC-JTJ, 2015 WL 12591720, at *1 (D. Mont. Oct. 30, 2015).

Defendants' memoranda in connection with the motion to dismiss urge me to dismiss Plaintiffs' access claim for a different reason, arguing the claim is moot because the NSA already "has dutifully responded to Camper's requests for records about herself." Defs.' Mem. 15; *see* Reply 3, ECF No. 26. Plaintiffs' response in opposition to the motion does not dispute the point. I infer, accordingly, that they have conceded the issue. *See Kissi v. Panzer*, 664 F. Supp. 2d 120, 123 (D.D.C. 2009) ("Because the plaintiff's opposition fails to address the defendants' arguments, the Court may treat the defendants' motion as conceded."); *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 08-918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (collecting cases). For this reason, as well, I am dismissing Plaintiffs' access claim under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

I similarly find that Plaintiffs have conceded their second Privacy Act claim, which I construe as a claim to amend agency records under § 552a(g)(1)(A). Subsection (g)(1)(A) does not authorize district courts to order amendments to agency records in the first instance. Rather, it permits civil actions only where the agency has "ma[de] a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request." § 552a(g)(1)(A). The NSA letters enclosed as exhibits to Plaintiffs' Complaint make clear that the

---

[5] The Complaint alleges that Ms. Camper has sought "relevant information to explain why this campaign of constant harassment is occurring," and that "[e]very request for a FOIA has been denied." Compl. ¶ 6.

agency never made any such determination.  *See* ECF Nos. 1-4, 1-5.  These letters show that the agency construed Ms. Camper's June 2015 request as a request for *access* to agency records – not a request to amend or correct a record.  *See* ECF No. 1-4 (characterizing the June 2015 request as a request "for records about you"); ECF No. 1-5 (acknowledging receipt of Ms. Camper's letter appealing the agency's "denial of your request for records this Agency maintains on you").  Plaintiffs' response in opposition to the motion acknowledges as much, conceding that Ms. Camper "never explicitly asked to amend or correct her records."  Opp'n 9.  Plainly, Plaintiffs did not exhaust the administrative remedies outlined in § 552a(d)(2) and (d)(3).  *See Pollack v. Dep't of Justice*, 49 F.3d 115, 117 n.1 (4th Cir. 1995).  It follows, then, that their amendment claim under § 552a(g)(1)(A) is not within this Court's power to adjudicate.  *See Brown v. Dep't of Justice*, No. RDB-18-73, 2018 WL 4777569, at *2 (D. Md. Oct. 3, 2018); *Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 89 (D.D.C. 2018) (explaining that the failure to exhaust administrative remedies is a jurisdictional bar to amendment suits under § 552a(g)(1)(A)).  This claim, therefore, must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### Leave to Amend

I now turn to Plaintiffs' request for leave to amend the Complaint in light of their concession that their constitutional claims could not proceed as initially pleaded.  *See* Opp'n 10.  Their response in opposition to the motion to dismiss explains they seek leave "to allow them to name the individual defendants who are responsible for committing illegal surveillance and intrusions into the Plaintiffs' privacy in violation of the Fourth Amendment, i.e., bringing claims against 'John Does.'"  *Id.*  The amendment would not name the defendants "because the Plaintiffs are not aware of who exactly has been hired from the NSA to perpetrate the intrusions and electronic surveillance."  *Id.*

A plaintiff may amend his or her complaint once as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). After that, amendments are permissible "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Federal Rules of Civil Procedure directs courts to "freely give leave when justice so requires," *id.*, a mandate the Supreme Court has highlighted as one that "is to be heeded," *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three situations: when the opposing party would be prejudiced, when the amendment is sought in bad faith, or when the proposed amendment would be futile." *Longue v. Patient First Corp.*, 246 F. Supp. 3d 1124, 1126 (D. Md. 2017) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).

I have little difficulty concluding that the amendment Plaintiffs propose would be futile. Switching out Defendants' names and replacing them with "John Doe" would not make this suit any less frivolous. This Court's jurisdiction would remain doubtful, and Plaintiffs' constitutional claims would be just as implausible as they are at present.

In *Neitzke v. Williams*, the Supreme Court explained that "[a] patently insubstantial complaint may be dismissed . . . for want of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." 490 U.S. 319, 327 n.6 (1989). This principle, known as the "substantiality doctrine," "forbids the federal district courts from exercising subject matter jurisdiction over claims that are attenuated and insubstantial, absolutely devoid of merit, obviously frivolous, or no longer open to discussion." *Stratton v. Mecklenburg Cty. Dep't of Soc. Servs.*, 521 F. App'x 278, 289 (4th Cir. 2013) (per curiam) (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). Courts examining this doctrine have emphasized that the "insubstantiality threshold is a difficult one to meet." *Davis v. Pak*, 856 F.2d 648, 651 (4th Cir. 1988). Only where the claims are "flimsier than 'doubtful or questionable'" – in other words, where they are "essentially fictitious" – will the court

lack jurisdiction to hear them. *Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994) (quoting *Hagans*, 415 U.S. at 537-38). "Claims that are essentially fictitious include those that allege 'bizarre conspiracy theories, any fantastic government manipulations of [the plaintiffs'] will or mind or any sort of supernatural intervention.'" *Newby v. Obama*, 681 F. Supp. 2d 53, 56 (D.D.C. 2010) (quoting *Best*, 39 F.3d at 330).

Plaintiffs' counsel argues his clients' claims are at least "within the realm of possibility."[6] Opp'n 5. They are not.[7] Ms. Camper herself acknowledges at the outset of the Complaint that she "has no explanation for" the various "strange[,] random encounters" her pleading catalogs. Compl. ¶ 4. And yet, her lawyer has offered one anyway, asserting that the NSA has, for unknown reasons, committed resources to a 16-year campaign to monitor Ms. Camper, pester her relatives, destroy her personal property, stymie her job prospects, and interfere with her TV and internet use. This easily ranks among the type of preposterous conspiracy theories the substantiality doctrine precludes the district courts from hearing. *See, e.g.*, *Widtfeldt v. Internal Revenue Serv.*, 317 F. Supp. 3d 281, 283-84 (D.D.C. 2018) (dismissing claims based on "vague and supported allegations of government-created epidemics, 'break-ins,' partisan conspiracies, and bribery"), *aff'd*, No. 18-5242, 2019 WL 479846 (D.C. Cir. Jan. 28, 2019); *Roum v. Fenty*, 697 F. Supp. 2d 39, 42 (D.D.C.

---

[6] Counsel, to be clear, was responding to Defendants' argument that his clients' claims were so obviously frivolous that I must dismiss them under Rule 12(b)(1). I am compelled to note, as an aside, that under Rule 12(b)(6) a claim must be more than merely "possible" to state a claim upon which relief may be granted. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[7] Indeed, based on the way he couches his clients' allegations in his January 2018 letter to the NSA's general counsel, carefully attributing each accusation to Ms. Camper, I suspect that Plaintiffs' counsel recognizes the claims for what they are. *See* ECF No. 1-13 (asserting that Ms. Camper "*claims* that the NSA has *allegedly* engaged in" harassment; "*claims* her privacy has continued to be invaded, and that she is under near-constant surveillance by the NSA"; "*claims* [a 2004] trespass was conducted by NSA agents"; and "*claims* the NSA agents involved in this conduct do not have a valid basis for surveillance or to believe that she is a security risk" (emphases added)).

2010) (concluding the court lacked jurisdiction over claims alleging that city officials "participated in a vast and ongoing conspiracy" involving the "use of various chemicals and technologies to regularly conduct experiments and surveillance on [the plaintiff] over a period spanning more than ten years"); *McBrien v. Fed. Bureau of Investigation*, No. 09 197, 2009 WL 260043, at *1 (D.D.C. Feb. 3, 2009) (dismissing a complaint alleging "that various federal government agencies and contractors are conducting surveillance on [the plaintiff] in her home and as she travels, that other entities have conducted biomedical and genetic experiments on her, and that other unidentified individuals are conspiring to harass her and to deprive her of any assistance with her troubles").

Even if I were to assume that I would have jurisdiction over Plaintiffs' amended claims, those claims undoubtedly would fail under Rule 12(b)(6). Under that rule, I would have to assume the truth of Plaintiffs' allegations that a host of "[s]trange incidents" have befallen Ms. Camper and her mother over the past 16 years. Compl. ¶ 20. I would not, however, have to credit their assumption that the NSA must have lurked behind those incidents. Refashioning Plaintiffs' constitutional claims as a Fourth Amendment claim against "John Doe" defendants would do nothing to nudge this suit into the realm of plausibility. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (requiring a plaintiff to plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of" illegality). Accordingly, their request for leave to amend the Complaint is denied.

## ORDER

Accordingly, it is this day, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. The Motion to Dismiss (ECF No. 19) filed by Defendants, the National Security Agency and Michael S. Rogers, IS GRANTED as follows:

13

a. Plaintiffs' Privacy Act claim (Count 4), comprising claims to access records and to amend records, is resolved as follows:

   i. The access claim is dismissed under Rule 12(b)(6) for failure to state a claim;

   ii. The amendment claim is dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction;

b. Plaintiffs' constitutional claims (Counts 7 and 8) are dismissed in light of Plaintiffs' acknowledgment that these claims cannot proceed as pleaded;

2. Plaintiff's request for leave to amend the Complaint IS DENIED; and

3. The Clerk SHALL CLOSE this case.

Date: August 15, 2019

/S/
Paul W. Grimm
United States District Judge